**ERIC BJORGUM (State Bar No. 198392)**
Eric.bjorgum@bjorgumlaw.com
BJORGUM LAW PC
119 E. Union Street, Suite C
Pasadena, CA 91103
Telephone:  (213) 596-6390
Facsimile:   (213) 596-6399

Attorneys for Plaintiff PCR Distributing, Co.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| PCR DISTRIBUTING CO., | Case No. 2:24-cv-07453-CV-AJR |
| Plaintiff, | **PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS AND STRIKE FIRST AMENDED COMPLAINT** |
| vs. | |
| JOHN DOES 1 – 10, d/b/a NHENTAI.NET and NHENTAI.TO, | |
| Defendants. | Date:  March 28, 2025 |
| | Time: 1:30 p.m. |
| | Judge: Hon. Cynthia Valenzuela |
| | Courtroom: 5D |
| | Place: U. S. Courthouse |
| | 350 West First Street |
| | Los Angeles, California 90012 |

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................................iii

MEMORANDUM OF POINTS AND AUTHORITIES............................................1

I.   INTRODUCTION ..............................................................................................1

II.  SUMMARY OF COMPLAINT .......................................................................3

III. ARGUMENT ......................................................................................................4

A.  PCR Properly Pleads Copyright Infringement ........................................4

    1.  Defendants' Argument That PCR Failed to Properly Plead Ownership Is Specious ...........................................................................................................4

        a.  CR's Ownership Allegations Alone are Sufficient .............................4

        b.  Defendants Offer No Competent Evidence to Dispute Ownership ......5

        c.  Defendants Have Attempted to Mislead the Court About the Evidence of PCR's Ownership.................................................................................6

        d.  Defendants Only Raise a Partial Dispute as to Ownership...................7

    2.  PCR Has Adequately Alleged Valid Copyrights.........................................7

        a.  PCR's Copyrights Validly Include Text and Images..........................7

        b.  PCR Has Valid Copyrights in Its Translations ..................................10

    3.  PCR Has Adequately Alleged Unauthorized Use .....................................11

B.  PCR's Claims Are Not Time-Barred .............................................................13

C.  The FAC Adequate Pleads Secondary Infringement Claims.........................15

D.  There Is No Basis to "Dismiss" PCR's Requests for Statutory Damages or Attorneys' Fees.................................................................................................15

    1.  Defendants Once Again Offer No Competent Evidence .........................15

    2.  Defendants Raise Disputed Factual Questions as to PCR's Entitlement to Statutory Damages or Attorneys' Fees.....................................................16

    3.  Defendants Only Raise a Partial Challenge to PCR's Right to Statutory Damages or Attorneys' Fees ......................................................................17

i

E.   NHentai Provides No Basis to Strike Portions of the Complaint ...................17

    1.   There is No Basis to Strike Allegations as to www.nhentai.to ...............18

    2.   There is No Basis to Strike Allegations as to Defendants' Pattern and Practice of Copyright Infringement............................................................18

    3.   There is No Basis to Strike the Relief Requested ...................................19

F.   If The Court Grants Defendants' Motion to Dismiss In Any Respect, It Should Grant PCR Leave to Amend the Complaint .............................................21

IV.   CONCLUSION ................................................................21

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS AND STRIKE FAC

## TABLE OF AUTHORITIES

**Cases**

*Brown v. Wireless Networks, Inc.*, No. C 07-4301 EDL, 2008 WL 4937827, at *4 (N.D. Cal. Nov. 17, 2008) ................................................................................. 12

*Capitol Recs., Inc. v. Thomas-Rasset*, 692 F.3d 899 (8th Cir. 2012) ....................... 20

*DeSoto v. Yellow Freight Sys., Inc.*, 957 F.2d 655, 658 (9th Cir. 1992) ................... 21

*DISH Network L.L.C. v. Dima Furniture, Inc.,* 2019 WL 2498224 at *8-9 (D. Md. June 17, 2019) ....................................................................................................... 20

*Disney Enterprises, Inc. v. Delane*, 446 F. Supp. 2d 402, 408 (D. Md. 2006) ......... 20

*Dorsey v. Old Sur. Life Ins. Co.,* 98 F.2d 872, 873 (10th Cir. 1938) ........................ 9

*Dorval v. Rahimi*, No. 2:24-CV-01347-JLS-MRW, 2024 WL 3659601 (C.D. Cal. July 5, 2024) ........................................................................................................... 14

*Feist Publications, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 345 (1991) ............... 9

*Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 534 n.19 (1994) .......................................... 19

*Hennessy v. Penril Datacomm Networks, Inc.,* 69 F.3d 1344, 1354 (7th Cir. 1995) .. 6

*In re Aimster Copyright Litig.*, 334 F.3d 643, 653 (7th Cir. 2003) ........................... 20

*Khoja v. Orexigen Therapeutics*, Inc., 899 F.3d 988, 1002 (9th Cir. 2018) ............. 12

*Malibu Textiles, Inc. v. Label Lane Int'l, Inc.*, 922 F.3d 946, 952 (9th Cir. 2019) ..... 4

*May v. Sony Music Ent.,* 399 F. Supp. 3d 169, 194 (S.D.N.Y. 2019) ....................... 17

*Payne v. Manilow*, No. CV183413PSGPLAX, 2018 WL 6321638, *5 (C.D. Cal. Oct. 29, 2018) .......................................................................................................... 5

*Petrella v. Metro-Goldwyn-Mayer, Inc.*, 572 U.S. 663, 671 (2014) ......................... 14

*Signo Trading Int'l Ltd. v. Gordon*, 535 F. Supp. 362 (N.D. Cal. 1981) ................. 10

*Supermail Cargo, Inc. v. United States*, 68 F.3d 1204, 1206-07 (9th Cir. 1995) ..... 14

*Swallow Turn Music v. Wilson*, 831 F. Supp. 575, 580 (E.D. Tex. 1993) ............... 18

*Taylor v. Meirick*, 712 F.2d 1112, 1117 (7th Cir. 1983) ........................................... 14

*Thompson v. Paul*, 657 F. Supp. 2d 1113, 1130 (D. Ariz. 2009) .............................. 7

*United States v. Ritchie*, 342 F.3d 903, 909 (9th Cir. 2003) ......................................6

*Von Saher v. Norton Simon Museum of Art at Pasadena*, 592 F.3d 954, 969 (9th Cir. 2010).........................................................................................................................13

*Wildlife Exp. Corp. v. Carol Wright Sales, Inc.*, 18 F.3d 502, 514 (7th Cir. 1994)..19

*Will Co. v. Lee*, No. C20-5802 BHS, 2025 WL 43121 at *2 (W.D. Wash. Jan. 7, 2025).........................................................................................................................20

**Other Authorities**

17 U.S.C. § 101.............................................................................................................9

17 U.S.C. § 410(c) ........................................................................................................5

17 U.S.C. § 502(a).......................................................................................................20

17 U.S.C. § 504(c)(2) ..................................................................................................19

17 U.S.C. § 507(b) .......................................................................................................14

Fed. R. Civ. P. 12(d) .....................................................................................................6

Fed. R. Evid. 1002 .......................................................................................................16

Fed. R. Evid. 1004(a)-(d) ............................................................................................16

Fed. R. Evid. 1006 .......................................................................................................16

Fed. R. Evid. 201(b) ..................................................................................................5, 6

Fed. R. Evid. 901(4) .....................................................................................................11

James E. Hawes and Bernard C. Dietz, Copyright Registration Practice, § 15:16 (2024 Update)................................................................................................................8

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS AND STRIKE FAC

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

PCR, a creator and distributor of premium hentai (Japanese adult amination) art and publications, brought this case against Defendants,[1] the owners and operators of one or more pirate websites known as "nHentai," to try to put a stop to Defendants' brazen infringement of PCR's copyrights. Defendants now move to dismiss or strike the First Amended Complaint ("FAC") (the "Motion").

Defendants' Motion is an ill-conceived and specious attempt to litigate numerous disputed issues of fact through an attack that is supposed to focus on the face of the pleadings. The Motion should be denied in its entirety.[2]

It is axiomatic that the well-pleaded allegations must be accepted as true on a 12(b)(6) motion. Yet Defendants' Motion seeks to dispute virtually *all* of the key factual allegations in the FAC. And the Motion attempts to do so almost entirely through either no evidence or inadmissible evidence that is often inaccurate at best, or affirmatively misleading at worst.

For instance, Defendants claim that PCR cannot maintain copyright infringement claims because some of the infringed works are registered in the name of "JAST USA," and thus that PCR is not the "owner" of these copyrights. The FAC

---

[1] PCR sued "John Does 1 – 10, d/b/a nHentai.net and nHentai.to" because it was unaware of the true identities of the owners and operators of the websites infringing PCR's copyrights. The defendants moved for a protective order seeking to avoid disclosing their identities. (Dkt. 32.) On February 7, 2025, Magistrate Judge Richlin denied Defendants' request and ordered them to stop using pseudonyms, but stayed his order for 14 days "to permit Defendant the opportunity to seek review of this Order from the District Judge." (Dkt. 45 at 8.) Instead of "seek[ing] review" by filing a *motion* as required by Local Rule 72-2.1—and first meeting and conferring with PCR's counsel pursuant to Local rule 7-3—Defendants filed "objections" to the Order, without noticing a hearing date. (Dkt. 50.) PCR is separately moving to strike Defendants' procedurally improper and substantively baseless "objections." Because PCR is still unaware of the defendants' identities after seven months (*see* Dkt. 1), they are referred to generically herein as "Defendants."

[2] In violation of Local Rule 7-4, the caption page and "notice" of the Motion do not state the hearing date. (Dkt. 47 at 1:22 ("Date: TBD"); *see id.* at 2:1-5.) This alone is grounds to deny the Motion. *See* Local Rule 7-4 .

unambiguously asserts that PCR owns *all* the registered copyrights presently at issue in this case. This assertion alone suffices to defeat a motion to dismiss, regardless of the specifics of the copyright registrations. In any event, the FAC also unambiguously states that JAST USA is merely a fictitious business name for PCR. In a misguided effort to contradict this well-pleaded allegation, defense counsel submitted a declaration stating that she was unable to locate the applicable fictitious business name filing. But it can be readily located with a simple search in a manner of *seconds*.

Defendants argue that because PCR registered their graphic novels or comic books with the Copyright Office as "literary works," they have no copyrights in any images. But a graphic novel incorporates both text and images, and so can be registered either as a "literary work" or a "visual work." And Defendants argue that there is not enough translated text to warrant copyright protection, but cherry-pick a handful of words or phrases, while ignoring hundreds of pages of dialogue. Once again, this is too factual for the motion to dismiss stage when a registration is presumed valid.

Defendants make several arguments based on the claim that PCR consented to Defendants' infringement for years. As "evidence," Defendants cite several emails attached as "exhibits" to the Motion itself, or to statements in an attorney's declaration purporting to recount what the attorney saw when visiting various web pages. This "evidence" is inadmissible and unavailing. It lacks authentication; violates the best evidence rule; at best creates a factual dispute as to when the infringement commenced, which cannot be resolved on a motion to dismiss; and pertains to less than all of the copyrights.

Defendants' motion to strike fares no better. They assert—without evidence—that the website "www.nhentai.to" is unrelated to "www.nhentai.net." They claim—with no citation to authority—that the FAC's allegations regarding Defendants' routine infringement of others' copyrights is irrelevant, when it obviously relates to

1  Defendants' willfulness and thus their liability for enhanced statutory damages and
2  attorneys' fees. And Defendants argue that the injunctive relief requested in the FAC
3  must be stricken, without citing any legal authority that such relief is unavailable as a
4  matter of law (it isn't).

5  ## II.    SUMMARY OF COMPLAINT

6      PCR, dba JAST USA, creates, acquires, translates, and distributes premium
7  hentai art and publications from Asia to the U.S., delivering high-quality collectible
8  products to a niche audience. (FAC ¶ 1.) PCR monetizes its operations through online
9  advertising and its online platforms that drive users toward purchasing games,
10 physical books, and merchandise. (Id. ¶ 4.) PCR also offers high-value, one-of-a-kind
11 art pieces at trade shows. (Id.) PCR owns copyrights in numerous works, including
12 the "Subject Works" at issue in this case. (Id. ¶¶ 2-3, 6, 28-31, 69-70.)

13     NHentai.net is a website that displays pirated copyright-registered adult
14 entertainment content without authorization or license. (Id. ¶¶ 38, 42.) NHentai.net
15 thus does not incur the costs associated with content production. (Id. ¶ 38.) PCR's
16 Subject Works appear on thousands of pages of the nHentai.net website. (Id. ¶ 51.)
17 Since the original complaint was filed, PCR has learned of additional instances of
18 infringement by Defendants. (Id. ¶¶ 55-59.) Defendants' use of PCR's copyrighted
19 works is unauthorized. (Id. ¶¶ 32, 50-51, 71-73.) Defendants have routinely
20 disregarded take-down notices issued by PCR. (Id. ¶¶ 6, 48, 52-54, 61-63.)

21     Defendants' website garners roughly 1 billion visits per year, and they monetize
22 their copyright infringement through advertisements on the site. (Id. ¶¶ 39, 43-44.)
23 The owners and operators of nHentai.net are directly involved in the infringement and
24 upload all content themselves, i.e., third parties cannot upload content. (Id. ¶¶ 6, 40-
25 41, 49, 77-78.) However, users can download content at will, and nHentai takes no
26 measures to ensure that users do not download or republish copyrighted work. (Id. ¶
27 47.) NHentai facilitates and actively encourages further infringement by users, since

28

it drives traffic to the site and increases ad revenue. (Id. ¶¶ 46, 66-67, 87-90, 96-98, 106-108.)

The FAC brings claims for direct, vicarious, contributory, and inducement of copyright infringement, and seeks damages, statutory remedies, and injunctive relief.

## III.  ARGUMENT

### A.  PCR Properly Pleads Copyright Infringement

#### 1.  Defendants' Argument That PCR Failed to Properly Plead Ownership Is Specious

Defendants point out that "[a]s to four of the seven asserted copyrights, the Copyright Office documents show JAST USA, not PCR, as the 'copyright claimant' and apparent legal owner." (Mot. at 4:18-20.) But the FAC clearly alleges that JAST is simply a registered fictitious business name (or "dba") of PCR Distributing Co. (FAC ¶ 24). Thus, PCR *is* the registered copyright owner of those four copyrights (along with the three other copyrights that Defendants apparently concede are registered in PCR's own name).

Defendants nevertheless try to persuade this Court that the allegation in the FAC—that JAST is merely a dba of PCR—is factually false. Specifically, Defendants assert: "Nhentai.net's counsel conducted searches by the filing number and all variations of the entity names and were unable to locate the alleged filing. Rynell Decl. ¶ 20." (Mot. at 5:1-2.) Defendants' argument fails for at least four reasons.

##### a.  PCR's Ownership Allegations Alone are Sufficient

The Ninth Circuit has made clear that factual disputes about copyright ownership are not an appropriate subject of a motion to dismiss. *Malibu Textiles, Inc. v. Label Lane Int'l, Inc.*, 922 F.3d 946, 952 (9th Cir. 2019) (reversing dismissal). Thus, the mere fact that PCR is not listed as the registered owner of certain of the copyrights is not a basis to grant the Motion. In fact, a case cited *by Defendants* considered—and rejected—an argument nearly identical to Defendants':

Defendants first argue that the Court should reject Plaintiff's allegation that he owns the copyrights to the Show because "judicially noticeable documents show that the allegation is false." Specifically, they point to the fact that registrations recorded at the Copyright Office do not list Plaintiff as the claimant of any of the Show's copyrights . . . . Although a copyright certificate from the U.S. Register of Copyrights "constitute[s] prima facie evidence of the validity of the copyright," 17 U.S.C. § 410(c), it is only a rebuttable presumption and does not definitively resolve the ownership issue. . . . ***Plaintiff's mere allegation of ownership is sufficient to defeat a motion to dismiss*** under Rule 12(b)(6). . . . Here, Plaintiff alleges that he is "the sole and exclusive owner" of the Show's copyrights, and ***the fact that the registrations recorded at the Copyright Office do not list him as a claimant is not definitive evidence that this allegation is false.***

*Payne v. Manilow*, No. CV183413PSGPLAX, 2018 WL 6321638, *5 (C.D. Cal. Oct. 29, 2018) (emphasis added; citations and quotations omitted).

The FAC clearly and repeatedly alleges that PCR is the owner of the copyrights in question. (FAC ¶ 69 ("Plaintiff owns copyrights in the Subject Works."); *see id*. ¶¶ 2-3, 6, 28-31, 70.) Regardless of what the copyright registrations show, that is more than sufficient to overcome Defendants' Motion.

### b. <u>Defendants Offer No Competent Evidence to Dispute Ownership</u>

On a Rule 12(b)(6) motion, the Court cannot even consider Defendants' "evidence" disputing PCR's ownership of the copyrights. As the *Payne* case cited by Defendants makes clear, because Defendants are challenging statutory standing (i.e., copyright ownership) under Rule 12(b)(6), rather than Article III standing under Rule 12(b)(1), the Court "is restricted to considering materials that are part of the pleadings and matters that may be appropriately taken under judicial notice." *Payne*, 2018 WL 6321638 at *4.

Judicial notice may only be taken of "a fact that is not subject to reasonable dispute." Fed. R. Evid. 201(b). While a court may often properly take judicial notice

on a motion to dismiss of a filing in a county recorder's office,[3] a court may not take judicial notice of defense counsel's *representation* as to what the San Diego Recorder's Office's recorder's website *does not* contain. (Dkt. 47-6 ¶ 20.)

Here, Defendants merely have evidence that *they* were not successful in locating a record. That is not the underlying facts. *See United States v. Ritchie*, 342 F.3d 903, 909 (9th Cir. 2003) (finding reversible error in dismissing complaint based on DEA forfeiture counsel's declaration attesting to the DEA's attempts to provide notice to claimant; "The underlying facts relevant to the adjudication of this case— what notice procedures the DEA used, whether Horner had actual notice, and so on— do not remotely fit the requirements of Rule 201.").

Because Defendants' extrinsic evidence is not a proper subject of judicial notice, it cannot be admitted on a motion to dismiss without converting it into a motion for summary judgment. *See* Fed. R. Civ. P. 12(d); *Ritchie*, 342 F.3d at 909.

### c.  **Defendants Have Attempted to Mislead the Court About the Evidence of PCR's Ownership**

To the extent that extrinsic evidence is properly considered, it only confirms that Defendants' "no ownership" argument should be rejected outright. Indeed, if Defendants' counsel was "unable to locate" the fictitious business name filing showing that JAST USA is a dba of PCR, they must not have tried very hard.

PCR's counsel logged onto the San Diego County Recorder Office website's Fictitious Business Name search page, entered "JAST USA" into the "Search By Name" tab, and found the applicable record *in less than 30 seconds*. (Pritikin Decl., ¶ 2.) The FBN filings reflect that JAST USA was indeed registered as a dba of PCR on July 31, 2019. (*Id.*, ¶ 2 & Exh. A.)[4] It had also previously been registered as a dba in

---

[3] The fact that a document is filed with or created by a public agency does not necessarily make it a proper subject of judicial notice. *See, e.g., Hennessy v. Penril Datacomm Networks, Inc.,* 69 F.3d 1344, 1354 (7th Cir. 1995).

[4] The FAC referenced the "Fictitious Business Name Statement number of 2019-9513905." (FAC ¶ 24.) To be precise, this is the Proof of Publication (POP) number associated with the FBN. (Pritikin

1  2015, and was again registered in 2024. (*Id.*, ¶ 3 & Exh. B.) Defendants' assertion

2  that JAST is not a dba of PCR—and thus that PCR has not properly pleaded

3  ownership—is nothing more than a specious attempt to mislead the Court.

### d. Defendants Only Raise a Partial Dispute as to Ownership

5          Defendants only purport to dispute ownership as to four of the seven copyrights

6  at issue in the FAC. In other words, Defendants only assert a defect as to *part* of

7  PCR's cause of action for copyright infringement. This is, at most, a basis for a motion

8  to *strike* certain *allegations* under Rule 12(f), not a motion to *dismiss* under Rule

9  12(b)(6). *See, e.g., Thompson v. Paul*, 657 F. Supp. 2d 1113, 1130 (D. Ariz. 2009)

10 ("The Court is unaware, however, of any situation in which a Rule 12(b)(6) motion

11 may be used to strike certain allegations in support of a claim . . . ."). Although

12 Defendants move in the alternative to strike certain allegations, the allegations

13 regarding PCR's ownership of the four copyrights registered in the name of JAST

14 USA are not among them. *See* Mot. at 19:20-22:16.

### 2. PCR Has Adequately Alleged Valid Copyrights

16         Defendants' argument that PCR has not adequately alleged valid copyrights in

17 the infringed works, like their no-ownership argument, is based on false premises.

### a. PCR's Copyrights Validly Include Text and Images

19         Defendants assert that because the copyright registration were for "literary

20 works," that necessary excludes the images that accompany the text of the graphic

21 novels in question. *See* Mot. at 6:14-17 ("Each of the seven copyrights are 'text'

22 copyrights and, as such, begin with the letters TX. Copyrights for visual materials are

23 claimed in a different manner and are registered beginning with the letters VA for

---

25 Decl., ¶ 4 & Exh. C.) The FBN number itself is 2019-9018807. (*Id.*, Exh. A.) But Defendants cannot

26 rely on this minor discrepancy, because they specifically asserted that they "conducted searches by the filing number *and all variations of the entity names* and were unable to locate the alleged filing."

27 (Mot. at 5:1-2 (emphasis added).) In fact, FBN filings linking JAST USA as the dba of PCR Distributing Co. can be readily located whether one searches for the terms "PCR Distributing Co.,"

28 "PCR," "JAST USA," or "JAST." (Pritikin Decl., ¶¶ 2-3 & Exhs. A, B.)

'visual arts.'"). As is typical for Defendants, they cite no authority for this supposed distinction. It is a false dichotomy.

Graphic novels and comic books, which encompass both text *and* images, can be registered *either* as literary works *or* visual arts:

> *A cartoon or comic strip can be registered as a visual arts work or a literary work*, depending on the nature of the work and the way it is presented. Generally, cartoons are considered works of the visual arts; however, *if textual elements are preponderant in a cartoon or comic strip, it should be registered as a literary work.*

U.S. Copyright Office, "Cartoons and Comic Strips," at 1, *available at* https://www.copyright.gov/circs/circ44.pdf (emphasis added); *see also* James E. Hawes and Bernard C. Dietz, Copyright Registration Practice, § 15:16 (2024 Update) ("[I]f the textual elements in a comic strip are preponderant, registration should be made on Form TX."). The fact that PCR registered its copyrights in the graphic novels in question as "literary works" using Form TX does not mean that there is no protection in the associated images.[5]

Defendants point out that *some* of the copyright registrations expressly exclude artwork from the scope of the registration. (*See, e.g.,* Mot. at 7:1-5.) But even as to these works, the Court cannot determine on a motion to dismiss whether Defendants have copied *enough* of the text to have committed infringement.

Defendants point to one page of a 24-page work and assert that the only copyrighted content on that page is six dialogue bubbles and a caption. (Mot. at 9:1-16.) But who says that a few dozen words on a page—particularly on each page of a

---

[5] Even if there were some defect in registration, as noted in "Copyright Litigation Handbook": Inaccurate or problematic copyright registrations or inadequate descriptions of the copyrighted work . . . should not lead to dismissal of the complaint. Absent a showing that a copyright registrant has defrauded or made a deliberate misrepresentation to the Copyright Office, a presumption of regularity and appropriateness in filing is ordinarily subsumed in the presumption of validity that attaches to a certificate of copyright registration.

Raymond J. Dowd, Copyright Litigation Handbook, § 9:11 (2d ed.).

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS AND STRIKE FAC

multi-page work—cannot be copyrightable? As a Supreme Court case cited by Defendants points out, "the requisite level of creativity" for copyright protection "is extremely low; even a slight amount will suffice. The vast majority of works make the grade quite easily, as they possess some creative spark, no matter how crude, humble or obvious it might be." *Feist Publications, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 345 (1991) (quotation omitted).

Defendants also suggest that images contained in the Subject Works would *only* be protected if the copyrights were registered as "audiovisual works." (Mot. at 7:26-8:1.) In support of this assertion, Defendants provide a misleadingly incomplete definition of "audiovisual works." Defendants state that "'Audiovisual works' are 'works that consist of a series of related images which are intrinsically intended to be shown … together with accompanying sounds, if any…'") (Mot. at 8 n.3) (citing 17 U.S.C. § 101). What Defendants chose to omit is essential to the definition. The full definition of "audiovisual works" is "works that consist of a series of related images which are intrinsically intended to be shown *by the use of machines, or devices such as projectors, viewers, or electronic equipment*, together with accompanying sounds, if any, regardless of the nature of the material objects, *such as films or tapes*, in which the works are embodied.") 17 U.S.C.A. § 101 (emphasis added). This category applies to movies and videos. Printed or digital graphic novels that contain only static images and written text would not qualify as audiovisual works. Defendants' argument is a red herring.[6]

Tellingly, Defendants' only case citation is to an 87-year-old opinion that held that the business concept for an insurance policy was not copyrightable. *See* Mot. at 9:18-21 (citing *Dorsey v. Old Sur. Life Ins. Co.,* 98 F.2d 872, 873 (10th Cir. 1938)).

---

[6] Defendants point to one reference to copyrighted "videos" in the FAC. (Mot. at 8:3-4 (citing FAC ¶ 47).) But this reference was made in the context of Defendants' general business model. PCR did *not* assert that it owns copyrights in videos, or that Defendants have infringed any of PCR's copyrights in videos.

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS AND STRIKE FAC

1  That obviously has nothing to do with Defendants' brazen online piracy of PCR's
2  graphic novels.

3  ### b. **PCR Has Valid Copyrights in Its Translations**

4  Defendants suggest that Defendants *only* have copyrights in the English
5  translations of the text in the Subject Works. (*See* Mot. at 10:5-6 ("Plaintiff has
6  asserted copyrights that are allegedly 'English language derivative works.'") (quoting
7  FAC ¶¶ 30, 69).) Here again, Defendants have misleadingly quoted the original.
8  Plaintiff's copyrights are alleged to *include* but are not necessarily *limited to* "English
9  language derivative works." *See* FAC ¶ 30 ("For the Subject Works, Plaintiff has
10 entered into agreements with the original Artists or the assignees of the original Artists
11 for the exclusive right to create and/or distribute English Language Derivative Works.
12 For some of the Subject Works, the visual portions of the works must be re-drawn by
13 Plaintiff, and Plaintiff contributes editorial and layout decisions for the Subject
14 Works."); *id.* ¶ 69 ("[F]or each of the Subject Works, Plaintiff has *at least* the
15 exclusive rights to create and/or distribute English language derivative works. Such
16 English language derivative works include text, images and layout choices that are
17 the subject of registration with the Copyright Office.") (emphasis added).

18 In arguing that there is not enough originality in the translated words and
19 phrases to be entitled to copyright protection, Defendants cite only to a single case,
20 *Signo Trading Int'l Ltd. v. Gordon*, 535 F. Supp. 362 (N.D. Cal. 1981). (Mot. at 9:24-
21 11:6.). In *Signo,* the content claimed to be subject to copyright was "approximately
22 850 single words and approximately 45 short phrases, generally two or three words
23 in length, such as 'how are you.'" *Signo*, 535 F. Supp. at 364. The court held that this
24 fell below the low threshold for originality required for copyrightability.

25 In an attempt to shoehorn this case to fit *Signo*, Defendants cherry-pick a
26 smattering of short phrases or sounds that were translated, such as "Yesss" or "plap."
27 (Mot. at 10:24-11:2.) But this ignores the numerous other instances where the

28

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS AND STRIKE FAC

1   translations are of longer, more specific, and/or more nuanced sentences, such as
2   "They say spring brings fresh starts" (Mot. at 9:3-4), or "Kumokawa, did you bring
3   your second-semester course selection printout?" (Pritikin Decl. Exh. D). And in
4   support of their argument on non-copyrightability, Defendants reproduce in their
5   Motion only a single page of one of the protected works. (Mot. at 9:1-16.) Whether
6   the seven copyrighted works asserted in the FAC, which total hundreds of pages in
7   all, contain sufficient unique translated dialogue to be worthy of copyright protection
8   cannot be determined in Defendants' favor at the motion to dismiss stage, particularly
9   on the existing incomplete record.

10                    **3.    PCR Has Adequately Alleged Unauthorized Use**

11          The FAC repeatedly alleges that Defendants' use of PCR's copyright works
12  was not authorized. (FAC ¶¶ 32, 50-51, 71-73.) In the face of these unambiguous
13  allegations, Defendants argue that PCR has not alleged unauthorized use because,
14  supposedly, "permission was expressly given." (Mot. at 12:12.) In support of this,
15  Defendants cite several emails in which PCR representatives purportedly gave
16  Defendants permission to use the copyrighted works. (Mot. at 12:15-13:14 (citing
17  Dkt. 47-1, 47-2, 47-3).) Once again, this argument fails for at least four reasons.

18          *First*, the email chains are inadmissible as they have not been properly
19  authenticated. Defendants likely declined to submit a declaration to authenticate these
20  emails because they are still clinging to their effort to remain anonymous as long as
21  possible. Thus, the emails were simply attached as "exhibits" to the Motion itself.
22  Although defense *counsel* submitted a declaration attaching various Copyright Office
23  filings, counsel seemingly recognized that she would have no basis in personal
24  knowledge to authenticate these emails.

25          Anticipating this problem, Defendants argue in a footnote that the emails are
26  "authenticated due to their distinctive characteristics under Fed. R. Evid. 901(4)."
27  (Mot. at 12 n.4.) In support, Defendants cite *Brown v. Wireless Networks, Inc.*, No. C

28

07-4301 EDL, 2008 WL 4937827, at *4 (N.D. Cal. Nov. 17, 2008). (*Id.*) But in *Brown*, the exhibits objected w*ere* attached to a declaration. *See id.* at *4. Defendants offer no authority for the proposition that free-floating documents attached directly to a brief, without any testimony as to their provenance, are authentic.

Defendants claim the "distinctive characteristics" that authenticate the emails are the fact that they "contain multiple chains (messages sent back and forth), contain verifiable indicia including names and titles of senders giving Nhentai.net the permissions at issue, and span across a number of years." (Mot. at 12 n.4.) But these are the *contents* of the emails, or general features of *any* email, not distinctive characteristics that would authenticate *these* emails. Defendants do not have any admissible evidence to lay the foundation for *any* "distinctive characteristics." For example, Exhibit 1 to the Motion is a purported email from David Goldberg to "hey@nhentai.net." (Dkt. 47-1.) But Defendants have no evidence to show that this email was ever responded to or even received by whoever "hey" at nhentai.net is.

*Second*, the emails cannot be considered on a motion to dismiss to contradict the well-pleaded allegations of the complaint asserting that Defendants' use was unauthorized. (*See, e.g.,* FAC ¶¶ 51, 71-73.) The Court cannot consider documents that are nowhere mentioned in the complaint and then use them to find that the facts are different than what the complaint alleges. As the Ninth Circuit has held:

> [I]f the document merely creates a defense to the well-pled allegations in the complaint, then that document did not necessarily form the basis of the complaint. Otherwise, defendants could use the doctrine to insert their own version of events into the complaint to defeat otherwise cognizable claims.

*Khoja v. Orexigen Therapeutics*, Inc., 899 F.3d 988, 1002 (9th Cir. 2018). This is precisely the case here. The FAC squarely alleges that Defendants' use was unauthorized, and Defendants want to use emails to "insert their own version of events" to defeat the claims in the FAC. This is impermissible.

*Third*, even if the emails could be considered on a motion to dismiss (they cannot), they show—at most—that at one point in time, PCR considered trying to work collaboratively with entities that were pirating its copyrighted works rather than litigate against them. Nonetheless, the FAC clearly alleges that efforts to resolve the disputes between the parties failed, and that Defendants have consistently failed and refused to comply with PCR's DMCA takedown notices. (FAC ¶¶ 52-54.) Such evidence is hardly sufficient for the Court to conclude as a matter of law that Defendants' use of PCR's copyrighted works was authorized.

### B.    PCR's Claims Are Not Time-Barred

Defendants' statute of limitations arguments fails for a similar reason as its no-unauthorized-use argument: it is based entirely documents that are extrinsic to and nowhere referenced in the operative complaint. Defendants argue that several email chains, attached as Exhibits 1 – 5 to the Motion, show that PCR was aware of the infringement as early as October 2020, more than three years before the suit was filed. (Mot. at 14:13-18.) But Defendants don't cite a single case holding that those emails are *admissible* on a motion to dismiss to raise a statute of limitations defense that does not appear from the *face of the complaint.*

The law in the Ninth Circuit is clear: "A claim may be dismissed under Rule 12(b)(6) on the ground that it is barred by the applicable statute of limitations *only* when the running of the statute is *apparent on the face of the complaint.*" *Von Saher v. Norton Simon Museum of Art at Pasadena*, 592 F.3d 954, 969 (9th Cir. 2010) (emphasis added, quotation omitted). Here, the earliest date mentioned on the face of the complaint is October 23, 2022, the date one of the infringing galleries was uploaded. (FAC ¶ 8.) This is less than two years before this suit was filed on August 30, 2024—well within the statute of limitations.

Moreover, when there are multiple instances of infringement, the statute begins again with each infringement. *Petrella v. Metro-Goldwyn-Mayer, Inc.*, 572 U.S. 663,

671 (2014). A copyright infringement claim is subject to a three-year statute of limitations, which runs separately for each violation. 17 U.S.C. § 507(b). At the very least, Defendants have continued to make available a forum for user infringement, which they control and profit from. Thus, every time a user downloads or copies an infringed work that remains on the nHentai website, that resets the statute of limitations for, at a minimum, the contributory infringement, vicarious infringement, and inducement to infringement claims. *See, e.g., Taylor v. Meirick*, 712 F.2d 1112, 1117 (7th Cir. 1983) (affirming judgment for plaintiff, where defendant could not avoid liability for third-party infringement that he continued to facilitate).

Defendants' repeated citations to *Dorval v. Rahimi*, No. 2:24-CV-01347-JLS-MRW, 2024 WL 3659601 (C.D. Cal. July 5, 2024), are thus unavailing. In *Dorval*, the *complaint itself* recited facts showing that the plaintiff was aware that the defendant's license to use the plaintiff's copyrighted works had expired more than three years before plaintiff filed the lawsuit. *See Dorval*, 2024 WL 3659601 at *1. Here, there is no statute of limitations defense discernable from the FAC.

There is good reason why dismissal must be based on a statute of limitations defense apparent from the face of the complaint, and not from extrinsic evidence. By introducing only the extrinsic evidence that supports *their* theory, a defendant may not be presenting the whole story. Other facts may provide grounds for tolling the statute of limitations. *See, e.g., Supermail Cargo, Inc. v. United States*, 68 F.3d 1204, 1206-07 (9th Cir. 1995) ("A motion to dismiss based on the running of the statute of limitations period may be granted only if the assertions of the complaint, read with the required liberality, would not permit the plaintiff to prove that the statute was tolled. In fact, a complaint cannot be dismissed unless it appears beyond doubt that the plaintiff can prove no set of facts that would establish the timeliness of the claim.") (quotations and citations omitted).

Defendants' statute of limitations argument is also undercut by the fact that at

1  least some of the infringing works were (purportedly) uploaded as recently as *three*

2  *months ago.* (Pritikin Decl., ¶ 6 and Exh. E.[7]) The statute of limitations could not

3  possibly have run on acts of infringement that didn't even *begin* less than three years

4  ago.

5      Even if the Court were to consider Defendants' extrinsic evidence on a motion

6  to dismiss, Defendants have not developed the record sufficiently for the Court to

7  determine *which* acts of infringement began more than three years before the suit was

8  filed. Indeed, as discussed below in Part III.D, even as to galleries that were

9  purportedly uploaded prior to August 2021, whether those listed upload dates are

10  accurate or reliable is an open factual question.

11      **C.**    **The FAC Adequate Pleads Secondary Infringement Claims**

12      Defendants raise no arguments as to the deficiency of the secondary

13  infringement claims in the FAC other than saying that they rise or fall along with the

14  direct infringement claim. (Mot. at 16:15-25.) If the Court agrees that the direct

15  infringement claim is adequately plead, then Defendants necessarily concede that the

16  secondary infringement claims likewise must stand.

17      **D.**    **There Is No Basis to "Dismiss" PCR's Requests for Statutory**

18          **Damages or Attorneys' Fees**

19      Defendants argue that because some of the webpages containing infringing

20  content purportedly indicate the content was uploaded before the copyrights were

21  registered, statutory damages and attorneys' fees are unavailable as a matter of law.

22  (Mot. at pp. 17-19.) There are at least three reasons why this argument must fail.

23      **1.**    **Defendants Once Again Offer No Competent Evidence**

24      Defendants' argument hinges on the upload dates purportedly reflected on the

25

---

26  [7] The work infringed in the referenced example is titled "Sexual Healing." Defendants assert that

27  the associated URL "does not actually link to material that appears to be called or relate to 'Sexual Healing.'" (Motion at 11:10-14.) Again, setting aside this this assertion raises, at most, an improper factual dispute, it is also wrong. *See* Pritikin Decl., ¶ 7 & Exhs. F, G.

28

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS AND STRIKE FAC

applicable infringing nHentai.net web pages, which they claim predate the publication and/or copyright registration dates. (Mot. at 18:17-20, 19:6-18 (citing Rynell Decl., ¶¶ 11-12).) But the declaration of Defendants' counsel does not actually *attach* screenshots of these web pages as evidence of the listed upload dates. Instead, Defendants' counsel merely *represents* to the Court that she recently visited these pages, and relates through her declaration what the content of these pages showed. *See, e.g.,* Rynell Decl. (Dkt. 47-6) ¶ 11.

Aside from creating improper factual disputes at the pleading stage, Defendants have done precisely what the best evidence rule forbids: attempt to prove the contents of a writing without introducing the writing itself. *See* Fed. R. Evid. 1002. None of the exceptions to the best evidence rule would apply here to excuse Defendants' failure to attach screenshots from the webpages to prove the webpages' contents. NHentai's websites have not been "lost or destroyed"; Defendants, not PCR, have "control of the original"; and the websites' are "closely related to a controlling issue"—Defendants' argument on statutory damages and attorney's fees depends on them. Fed. R. Evid. 1004(a)-(d). Nor would a handful of screenshots be so "voluminous" as to permit defense counsel's "summary" of them to substitute for the originals' production. *See* Fed. R. Evid. 1006. The Federal Rules of Evidence do not permit defense counsel to say, in effect, "Just trust me about what the documents actually say." This is reason alone to reject Defendants' argument.

### 2. Defendants Raise Disputed Factual Questions as to PCR's Entitlement to Statutory Damages or Attorneys' Fees

Even if the Court were to consider counsel's representation as to what the documents show as evidence, given that Defendants operate a *pirate* website, it is entirely possible that the purported "upload" dates are not accurate (whether by intentional design or otherwise). Discovery will need to be taken to understand Defendants' uploading processes and timetables and determine whether the listed

upload dates are reliable. Unless and until that happens, when the infringement began, and whether PCR is potentially entitled to statutory damages or attorneys' fees, is an open question. *See May v. Sony Music Ent.,* 399 F. Supp. 3d 169, 194 (S.D.N.Y. 2019) (denying motion to dismiss claim for statutory damages and attorneys' fees; "[T]he evidence may well confirm that the alleged series of acts are sufficiently related to bar statutory damages and attorney's fees. . . . At this stage, however, the Court cannot conclude that there are no aspects of the alleged infringing acts that would not constitute a new infringing act for purposes of the registration rule.").

It is far too premature to make this factual determination about how nHentai.net operates. Indeed, despite this case being filed seven months ago, the owners and operators of nHentai.net are still fighting to avoid disclosing their very identities!

### 3.    Defendants Only Raise a Partial Challenge to PCR's Right to Statutory Damages or Attorneys' Fees

Defendants do not establish that *all* of the alleged acts of infringement occurred prior to the registration of the works in question. They again cherry pick a couple of examples of infringement that (purportedly) commenced prior to registration, and ignore other examples that don't support their theory. For example, Exhibit C to the FAC (conveniently ignored by Defendants) references a copyrighted work owned by PCR called "Sexual Healing." This work was registered on May 7, 2024. (Dkt 47-13 at 1.) But the corresponding nHentai.net web page referenced on Exhibit C to the FAC indicates that the infringing work was first published in mid-December 2024—well *after* registration. (Pritikin Decl., Exh. E.)

Defendants cannot establish that PCR is not entitled as a matter of law to statutory damages or attorneys' fees for *all* of its copyrighted works. Thus, this is a disputed issue of fact for another day, not a motion to dismiss.

### E.    NHentai Provides No Basis to Strike Portions of the Complaint

Defendants seek to strike three categories of allegations. As with Defendants'

other arguments, these arguments are not just meritless, but bordering on frivolous.

## 1.     There is No Basis to Strike Allegations as to www.nhentai.to

Defendants seek to strike the allegation that the Defendant owners and operators of nHentai.net "also own and operate the URL nHentai.to." (Mot. at 19:14-15 (quoting FAC ¶ 11). Of course, it is hardly unheard of for businesses to operate the same domain name under different registers (e.g., ".com," ".net," etc.)—sometimes for legitimate purposes, sometimes to defeat enforcement efforts. Defendants' only basis for striking the allegation regarding nhentai.to is that, "[a]s discussed in a hearing before Magistrate Richlin, the website nhentai.to is completely unrelated to www.nhentai.net." (Mot. at 19:15-16.)

Whatever defense counsel may have argued before Magistrate Richlin is just that—argument, not evidence. Even if defense counsel's argument could be given any weight in the face of allegations to the contrary, Defendants don't even bother attaching relevant excerpts of the transcript of that unidentified hearing at which this was "discussed." And the declaration submitted by defense counsel doesn't even *mention* www.nHentai.to at all. Defendants' argument is based on speculation and hearsay, not evidence—and certainly not based on the allegations in the complaint.

## 2.     There is No Basis to Strike Allegations as to Defendants' Pattern and Practice of Copyright Infringement

Defendants seek to strike allegations that Defendants have infringed on the rights of numerous copyright holders, not just PCR. (Mot. at 20:23-21:22.) Defendants characterize this as PCR "purport[ing] to plead the rights of all other individuals and/or entities" who have been harmed by Defendants. (Mot. at 20:24.) In reality, the fact that widespread infringement is central to Defendants' business model (*see* FAC ¶¶ 66, 75, 80, 92, 100, 113) goes to, among other things, the willfulness of Defendants' infringement. *See, e.g., Swallow Turn Music v. Wilson*, 831 F. Supp. 575, 580 (E.D. Tex. 1993) (willfulness includes "knowing that the normal course of

business involves a pattern of repeated copyright infringements. Should [this] occur, then 'willfulness' proven as to the course of business will suffice for 'willfulness' for any particular occurrence of copyright infringement.").

Defendants' willfulness, in turn, is relevant to their potential liability for enhanced statutory damages. *See* 17 U.S.C.A § 504(c)(2); *Wildlife Exp. Corp. v. Carol Wright Sales, Inc.*, 18 F.3d 502, 514 (7th Cir. 1994) (evidence that defendant viewed infringement as "cost of doing business" supported finding of willfulness and enhanced damage award; "Increased statutory damages may be necessary in a particular case to prove that it costs less to obey the copyright laws than to violate them.").

Defendants' pattern and practice of infringement, and the profitability of that course of conduct, is also relevant to the factors a court can considers in deciding whether to award attorneys' fees, including "motivation" and "deterrence." *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 534 n.19 (1994). Because Defendants' business relies on habitual infringement, their motivation to infringe is greater and thus the need for deterrence is greater. This is nothing "immaterial" about these allegations.

### 3.    There is No Basis to Strike the Relief Requested

Defendants argue that PCR has engaged in "extreme overreach" in requesting, among other relief, disabling Defendants' websites or transferring their domain names to PCR. (Mot. at 21:23-22:4 (citing FAC at 22-23).)

Defendants' argument is based entirely on their assertion that the webpages PCR complains of constitute "less than one percent" of the nhentai.net website. (Mot. at 22:1-3.) Once again, this is merely an assertion unsupported by evidence. The FAC alleges that the infringing pages identified to date do not necessarily reflect all instances of infringement. *See* FAC ¶ 29. Exactly how much of Defendants' website infringes on PCR's copyrights cannot be determined as a matter of law at this point.

Moreover, Defendants do not cite any authority holding that the requested relief

would *not* be available. *See* 17 U.S.C. § 502(a) (court may grant "injunctions on such terms as it may deem reasonable to prevent or restrain infringement of a copyright."). Courts have broad discretion to award injunctive relief as necessary to effectively prevent further wrongdoing—even if that involves proscribing otherwise lawful conduct. *See, e.g., Capitol Recs., Inc. v. Thomas-Rasset*, 692 F.3d 899 (8th Cir. 2012) (reversing trial court's refusal to grant broader injunction; "The district court is even permitted to enjoin certain otherwise lawful conduct where the defendant's conduct has demonstrated that prohibiting only unlawful conduct would not effectively protect the plaintiff's rights against future encroachment.") (citations and quotations omitted).

Indeed, other courts have granted precisely the type of relief being requested in the FAC. *See, e.g., Will Co. v. Lee*, No. C20-5802 BHS, 2025 WL 43121 at *2 (W.D. Wash. Jan. 7, 2025) (ordering disabling of domain names and transfer to copyright infringement plaintiff); *DISH Network L.L.C. v. Dima Furniture, Inc.,* 2019 WL 2498224 at *8-9 (D. Md. June 17, 2019) (same).

And given that Defendants have repeatedly disregarded PCRs' DMCA takedown notices (FAC ¶¶ 6, 61-63), there is good reason to believe that nothing short of wresting control of their websites—or blocking access to them—will prevent further infringement. *See, e.g., Disney Enterprises, Inc. v. Delane*, 446 F. Supp. 2d 402, 408 (D. Md. 2006) (granting permanent injunction where defendant "potentially has facilitated the download of far more than just the eleven programs listed in Plaintiffs' Exhibit A, and may continue to do so").

Indeed, the FAC's allegations about Defendants' infringement of *other* copyright holders' works strengthen the case for either transferring the domain names or blocking user access to the sites. Where a website has no legitimate purpose or is used primarily for infringement, there is little reason *not* to curtail its operations in an effort to avoid further wrongdoing. *See, e.g., In re Aimster Copyright Litig.*, 334 F.3d 643, 653 (7th Cir. 2003) (affirming grant of preliminary injunction effectively

1 shutting down website where "defendants here have provided no evidence whatsoever

2 (besides the unsupported declaration of Deep) that [defendants' website]

3 is *actually* used for any of the stated non-infringing purposes.") (original emphasis).

4       **F.**     **<u>If The Court Grants Defendants' Motion to Dismiss In Any Respect,</u>**

5            **<u>It Should Grant PCR Leave to Amend the Complaint</u>**

6       Defendants' repeated requests to dismiss the FAC *with prejudice* (Motion at

7 1:4, 11:6, 16:13, 16:25) ignore the strong policy favoring amendments. Indeed, this

8 Court's standing order notes that "the Ninth Circuit requires the policy favoring

9 amendment to be applied with 'extreme liberality.'" (Dkt. 49 at 9:19-24.) The Motion

10 itself concedes that "leave to amend should be granted 'unless the court determines

11 that the allegation of other facts consistent with the challenged pleading could not

12 possibly cure the deficiency.'" (Mot. at 3:14-16 (quoting *DeSoto v. Yellow Freight*

13 *Sys., Inc.*, 957 F.2d 655, 658 (9th Cir. 1992).) Defendant cannot remotely establish

14 that amendment would be futile.

15 **IV. CONCLUSION**

16       For the foregoing reasons, this Court should deny Defendants' Motion in its

17 entirety or, alternatively, grant PCR leave to further amend the FAC.

18

19 Dated:  March 7, 2025             Respectfully submitted,

20

21                          By: */s/ Eric Bjorgum*

22                          A. Eric Bjorgum

22                          BJORGUM LAW PC

23                          Attorneys for Plaintiff

23                          PCR Distributing Co.

24

25

26

27

28

## <u>CERTIFICATE OF WORD COUNT</u>

The undersigned, counsel of record for Plaintiff, PCR Distributing Co, certifies that this brief contains 6,977 words, according to the word count feature of the computer program used to prepare this brief, which complies with the word limit of L.R. 11-6.1.

By: _/s/ Eric Bjorgum_
A. Eric Bjorgum
BJORGUM LAW PC
Attorneys for Plaintiff
PCR Distributing Co.

22

1

## <u>CERTIFICATE OF SERVICE</u>

2        I hereby certify that on March 7, 2025, I electronically filed the foregoing

3    document with the Clerk of the Court using the CM/ECF system which sent

4    notification of such filing to the following:

5

6        John T. Wilson
    Jennifer M. Rynell

7        eservice@wwrlegal.com
    WILSON WHITAKER RYNELL

8        Wilson Legal Group P.C.

9        16610 Dallas Parkway, Suite 1000
    Dallas, Texas 75248

10

11       Glenn T. Litwak

12       glenn@glennlitwak.com
    LAW OFFICES OF GLENN T. LITWAK

13       201 Santa Monica Boulevard, Suite 300

14       Santa Monica, California 90401

15

16               By:_____*/s/ Eric Bjorgum*_____
                    A. Eric Bjorgum

17

18

19

20

21

22

23

24

25

26

27

28

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS AND STRIKE FAC