**BJORGUM LAW, PC**
A. ERIC BJORGUM (State Bar No. 198392)
eric.bjorgum@bjorgumlaw.com
119 E. Union Street, Suite C
Pasadena, CA 91103
Telephone: (213) 596-6390
Facsimile: (213) 596-6399

Attorneys for Plaintiff PCR Distributing, Co.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| PCR DISTRIBUTING CO.,<br><br>Plaintiff,<br><br>vs.<br><br>JOHN DOES 1 – 10, d/b/a NHENTAI.NET and NHENTAI.TO,<br><br>Defendants,<br><br>vs.<br><br>PCR DISTRIBUTING CO. and PCR DISTRIBUTING CO. d/b/a J18 Publishing and d/b/a JAST USA<br><br>Counter-Defendants | Case No. 2:24-cv-07453-CV-AJR<br><br>**PLAINTIFF'S OPPOSITION TO MOTION TO QUASH**<br><br>[Filed concurrently with Declaration of A. Eric Bjorgum<br><br>Date: November 19, 2026<br>Time: 11:00 am<br>Hon. Mag. Judge Richlin |

**TO ALL PARTIES AND THEIR RESPECTIVE ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE that Plaintiff PCR Distributing Co. submits the following opposition to Defendant's Motion to Quash Plaintiff's subpoena to Bank of America.[1]

Dated: November 19, 2026 Respectfully submitted,

By: *_/s/ A. Eric Bjorgum_*
A. Eric Bjorgum
BJORGUM LAW, PC
Attorneys for Plaintiff
PCR Distributing Co.

[1] Plaintiff's counsel apologizes for the late filing of this paper, but he has been in trial in Orange County all week (a fact known by Defendants' counsel). He has offered to stay response to the subpoena but Defendants' counsel file a motion to quash anyway. Bank of America has not responded.

# I. INTRODUCTION

For nearly two years, Defendants have concealed their identifies. They first litigated only as "the operators of Nhentai.net," then as an unnamed Delaware company, and then as X Separator LLC. Even after the Court ordered that they could not litigate anonymously, their Initial Disclosures identified no individuals. Only in Supplemental Initial Disclosures did Defendants name Nikita Nikishin and Neal Palavali as principals, without disclosing where either lives. In his August 2026 deposition, Mr. Nikishin admitted that Mr. Palavali lives in Los Angeles but claimed he could not say where (those deposition excerpts are not attached because Defendants claim that they designated the entire deposition confidential, and “disclosing” that Mr. Nikishin did not remember where his business partner lives is somehow confidential information.  This again begs the question – how many more people are involved here, and why are they hiding?)

Plaintiff PCR Distributing Co. ("PCR") served a subpoena on Bank of America, N.A. (the "Subpoena") because Defendants' own disclosures cannot be trusted to identify the people and money behind the infringing nHentai website. X Separator's motion (the "Motion") recasts the Subpoena as "post-judgment" discovery into its ability to pay. It is not.  First, as this Court knows, California has a prejudgment attachment procedure that has been adopted by the federal courts. Second, and more importantly, the Subpoena primarily seeks account-ownership, signatory, contact, advertising-revenue, and hosting-payment records that bear directly on live issues: who owns and controls nHentai, who profits from the infringement, whether the infringement is willful, and who must be named as a party.

The Motion should be denied for four independent reasons. First, X Separator did not present it by joint stipulation as Local Rule 37-2 requires. Second, X Separator lacks standing to assert relevance, the bank's burden, or the privacy of

other persons. Third, the records are relevant and proportional, and X Separator has offered no particularized showing of harm. Fourth, X Separator had actual notice of the Subpoena and suffered no prejudice under Rule 45(a)(4). Any legitimate confidentiality concern can be addressed through a protective order limiting use of the records, not by quashing the Subpoena.

## II. STATEMENT OF FACTS

**A. Defendants' Concealment of Their Identities.** Defendants were able to avoid providing the identities and addresses of their principals for nearly two years. Initially, Defendants sought to litigate only as "the operators of Nhentai.net." Before a hearing before this Court, they reluctantly revealed they were a Delaware company. (Bjorgum Decl. ¶ 4.) Following the District Court's order that they could not litigate anonymously (Dkt. No. 58), they revealed the company as X Separator LLC, a Delaware limited liability company. Their June 17, 2025 Initial Disclosures still identified no individuals. (Bjorgum Decl., Ex. C.) In August 2025, Supplemental Initial Disclosures identified the principals of X Separator as Nikita Nikishin and Neal Palavali, with no indication that either resided in the United States, and identified a new entity, "Archeon Interactive LLC." (Bjorgum Decl., Ex. F.) In discovery submissions, another individual was identified: "Michael Kim." *Id.*

**B. The Nikishin Deposition.** At his August 2026 deposition, Mr. Nikishin admitted that Mr. Palavali lives in Los Angeles but claimed he could not describe where, or even the topography of the area. He admitted having Mr. Palavali's telephone number but did not bring his phone to the deposition. (Bjorgum Decl.,)

**C. Continuing Infringement and New Claims.** Defendants have continued to add infringing material to nHentai after being placed on notice. On January 6, 2026, after the First Amended Complaint was filed, the USPTO issued PCR's registration for the J18 mark, Registration No. 8,092,936. PCR has on file a motion

to amend the complaint asserting claims for registered-trademark infringement and counterfeiting based on that registration. No scheduling order has been entered, and no deadline to amend, trial date, or pretrial conference has been set.

**D. The Subpoena.** PCR issued the Subpoena on November 4, 2026, with a compliance date of November 23, 2026. It defines the "Account Holders" as Mr. Palavali, Mr. Nikishin, Michael Kim, X Separator, Acheron Interactive LLC, and any person doing business as "nHentai," "nhentai.net," or "nhentai.to." The requests seek, among other things, documents sufficient to identify each account and its signatories, controlling persons, and beneficial owners; payments received from online advertising networks and payments made to Cloudflare, Namecheap, and other hosting, domain, or content-delivery providers ; and the email addresses, telephone numbers, and physical addresses associated with each account. The Subpoena expressly excludes Suspicious Activity Reports and invites the bank to contact PCR's counsel to clarify or narrow the requests. PCR served Defendant's counsel with a copy of the Subpoena on the same day it was served on Bank of America. Bank of America has not objected to or moved to quash the Subpoena.

**E. The Motion.** X Separator filed the Motion on November 17, 2026, noticing it for hearing two days later. Its counsel knew PCR's counsel was in trial. Counsel conferred under Local Rule 7-3 on November 9, 11, and 13, 2026. X Separator did not invoke Local Rule 37-1, did not prepare a joint stipulation, and did not submit any declaration describing a burden or harm.

## III. ARGUMENT

### A. The Motion Is Procedurally Improper Under Local Rule 37.

A motion relating to discovery under Rules 26 through 37 requires that the parties "must formulate a written stipulation," and "[t]he Court will not consider any discovery motion in the absence of a joint stipulation" or a declaration establishing that opposing counsel failed to cooperate. L.R. 37-2. Courts in this District treat

motions brought under Rules 26 through 37 as discovery motions subject to these rules, and a motion to quash a third-party subpoena and for a protective order has been presented in this District by joint stipulation. (*Mintz v. Mark Bartelstein & Assocs., Inc.*, 885 F. Supp. 2d 987, 990 (C.D. Cal. 2012)). This case shows why: so that a party does not file an "emergency" motion presenting a one-sided picture of a discovery dispute that could cloud the Court's understanding of the situation and require the Court to compare separate motions when the issues can and should be lined up neatly in one package. Per Rule 37-3, without a joint stipulation, "absent a showing of irreparable injury or prejudice not attributable to the lack of diligence of the moving party."

X Separator's Motion, which seeks a Rule 26(c) protective order and relief under Rule 45, is a discovery motion. It was filed without a joint stipulation, after a Local Rule 7-3 conference rather than a Local Rule 37-1 conference, and set for hearing two days later. X Separator offers no showing of irreparable injury. It knew of the Subpoena and its November 23 compliance date for nearly two weeks before filing. Any urgency is of its own making. The Court may deny the Motion on this ground alone.

**B. X Separator Lacks Standing to Assert Relevance, Burden on the Bank, or the Privacy of Others.**

A party generally lacks standing to challenge a subpoena issued to a non-party "unless the objecting party claims some personal right or privilege with regard to the documents sought." *Crispin v. Christian Audigier, Inc.*, 717 F. Supp. 2d 965, 973–974 (C.D. Cal. 2010)). A party's objection to a non-party subpoena on grounds of relevance or burden on the non-party does not supply such a right, especially where the non-party itself has not objected. Only the non-party served with a subpoena may prevent disclosure by objection; the party to whom records pertain cannot simply object. Some courts hold more strictly that only the person subject to

the subpoena may move to quash under Rule 45(d)(3)(A).

Three of X Separator's arguments fail at this threshold. First, X Separator cannot complain of the "burden of compiling years of detailed transactional records" on Bank of America. Undue burden under Rule 45 concerns the burden of compliance. Bank of America, a sophisticated institution that responds to subpoenas regularly, has not objected. Second, X Separator cannot assert the privacy interests of Mr. Palavali, Mr. Nikishin, Mr. Kim, or Acheron Interactive LLC. A party may seek relief only for discovery disputes that implicate its own cognizable interests, and courts reject efforts to stand in the shoes of affiliated entities that did not themselves challenge a subpoena. *PlayUp, Inc. v. Mintas*, 2024 WL 472639 (D. Nev. Feb. 6, 2024). None of those persons has moved. Indeed, X Separator's insistence that its own principals and affiliate are strangers to this case underscores why PCR needs third-party discovery to determine who stands behind nHentai. Third, X Separator's relevance objection, to the extent it concerns records other than its own accounts, is not a personal right or privilege.

At most, X Separator may assert a personal interest in its own account records. Even then, the movant bears the burden of establishing that interest with specificity, not through conclusory references to "sensitive" or "private" information. X Separator has not identified any account it holds at Bank of America or described what any such records contain.

**C. X Separator Has Not Shown Good Cause for a Protective Order.**

The party seeking a protective order "has the burden of establishing good cause and must show prejudice 'for each particular document it seeks to protect.'" *Fierro Cordero v. Stemilt AG Servs.*, LLC, 142 F.4th 1201, 1207 (9th Cir. 2025). A generalized privacy concern about financial information is insufficient; even where financial information may be protectable, the movant must make a particularized showing of specific prejudice. *Torres v. Rothstein*, 2020 WL 3808899 (D. Nev. July

6, 2020).

The Motion offers no declaration and no specifics. It asserts only that bank records "implicate significant privacy interests" and that production would place "highly confidential information into the hands of litigants." That is exactly the kind of broad allegation the Ninth Circuit has held inadequate. Moreover, privacy concerns in bank records can be addressed by subjecting the banking records to a stipulated protective order that limits the use of the documents and the people with access to them. PCR is willing to treat the production as confidential, or attorneys' eyes only, under a stipulated protective order. A blanket order forbidding all discovery is neither necessary nor justified.

D**. The Subpoenaed Records Are Relevant and Proportional to Live Claims.**

1. The Subpoena does not seek "post-judgment" discovery of ability to pay. PCR does not seek X Separator's net worth, and its argument does not depend on punitive damages, though these issues will be open under California law under the new trademark-related claims. The Subpoena seeks records identifying who owns, controls, and is paid by the nHentai enterprise. That is merits discovery. The Ninth Circuit has upheld permitting financial inquiry where it "explored the ownership of various businesses and trusts, not [the defendant's] personal wealth," because such questions "arguably related to both vicarious liability and willfulness." (*Erickson Prods., Inc. v. Kast*, 921 F.3d 822, 835–836 (9th Cir. 2019)) That is precisely what the Subpoena seeks here.

2. The records go to vicarious and secondary liability. One "infringes vicariously by profiting from direct infringement while declining to exercise a right to stop or limit it." *Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.,* 545 U.S. 913, 930–940, 125 S. Ct. 2764, 2776–2782, 162 L. Ed. 2d 781 (2005). Vicarious liability requires the right and ability to supervise the infringing conduct and a direct

financial interest in the infringing activity. *Rearden, LLC v. Walt Disney Pictures*, 152 F.4th 1058, 1066–1067 (9th Cir. 2025). Advertising revenue from a website whose traffic is driven by infringing content can satisfy that element. PCR cannot make that showing without the advertising-payment records sought in Request No. 6.

Mr. Nikishin has already testified that Defendants have the technical ability to stop the infringement and exclude PCR's works but decline to do so. The Subpoena seeks evidence of the other half of the test: who profits. It also seeks evidence of who exercises control. Account-signatory, beneficial-ownership, and contact records (Request Nos. 1, 2, and 8) will show which individuals and entities actually control the accounts into which nHentai's revenue flows. Payments to Cloudflare, Namecheap, and other hosting and domain providers will show who operates the infrastructure through which the infringing content is distributed.

3. <u>The records go to willfulness and to the identity of proper parties.</u> X Separator's own Motion measures relevance against "willfulness for purposes of statutory-damage enhancement," while denying that the subpoenaed material bears on it. The records are also needed to identify the persons who actually own and control nHentai, after two years in which Defendants hid behind a John Doe caption, an unnamed Delaware company, and disclosures that omitted their principals' locations. Courts have compelled bank records where they bear on commingling and whether individuals should be held personally liable, rather than on mere ability to pay. (Bank records are likewise discoverable where they are relevant to an alter-ego theory pleaded in the case.

4. The Subpoena is proportional. The proportionality factors favor PCR. Defendants' track record leaves PCR without any reliable alternative source: they withheld their principals' identities for two years, and their principal could not or would not say where his co-principal lives. PCR has had to ask a bank because

Defendants have not been forthright. The Relevant Period begins January 1, 2021, which tracks the period of nHentai's operation and the infringing conduct at issue, and the Subpoena excludes Suspicious Activity Reports. To the extent the Court finds any request broader than necessary, the proper remedy is to modify that request, not to quash the Subpoena in its entirety. PCR would accept, for example, a limitation of Request Nos. 3 through 5 to accounts associated with X Separator, Acheron Interactive LLC, or the nHentai name, together with confidential treatment of the production.

E. X Separator Had Notice and Suffered No Prejudice Under Rule 45(a)(4).

PCR served X Separator's counsel with a copy of the Subpoena on the same day it was served on Bank of America. Rule 45(a)(4)'s notice requirement exists to enable other parties to object or to serve their own subpoenas. Accordingly, "when opposing counsel have notice and sufficient time to object, they are not prejudiced by a violation of Rule 45['s] notice requirement," and courts in this circuit "generally deny motions to quash" where the party ultimately received notice and was able to object. *In re Born Korea, Co. Ltd.,* 839 F. Supp. 3d 1208, 1210–1211 (N.D. Cal. 2026).

X Separator received the Subpoena on the day it was served, conferred with PCR three times, and filed this Motion before the compliance date. Its Rule 45(a)(4) argument asserts only that prior notice was not given; it does not identify any resulting prejudice.

**IV. CONCLUSION**

PCR respectfully requests that the Court deny X Separator's Motion in its entirety. In the alternative, PCR requests that the Court order Bank of America to comply with the Subpoena subject to a protective order designating the production confidential, with any modification the Court deems appropriate.

Dated: November 19, 2026

Respectfully submitted,

BJORGUM LAW, PC

By: */s/ /A. Eric Bjorgum*

A. Eric Bjorgum

Attorneys for Plaintiff PCR DISTRIBUTING CO.